

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION TWO</u>

| | | |
|---|---|---|
| KYLE HUMMEL, | ) | ED109096 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Pike County |
| v. | ) | 19PI-AC00104 |
| | ) | |
| DIRECTOR OF REVENUE, | ) | Honorable Milan C. Berry |
| | ) | |
| Respondent. | ) | Filed: May 25, 2021 |

Kyle Hummel (Appellant) appeals from the trial court's judgment sustaining the Director of Revenue's (Director) revocation of Appellant's driving privileges for one year. We affirm.

## BACKGROUND

On April 20, 2019, at 8:39 p.m., Sergeant Scott Miller (Sergeant Miller) of the Missouri State Highway Patrol stopped Appellant for driving 75 miles per hour in a 60-mile-per-hour zone. When Sergeant Miller approached the vehicle he observed Appellant's eyes were watery and glassy, and he smelled faintly of alcohol. Appellant admitted to drinking two or three beers.

Sergeant Miller administered a series of field sobriety tests to determine whether Appellant was fit to drive. First was the horizontal gaze nystagmus test, where Sergeant Miller

observed all six possible clues.[1]  Next, he administered the one leg stand test and observed three clues.  Sergeant Miller conducted two other non-standardized field sobriety tests and then arrested Appellant for driving while intoxicated.

Sergeant Miller took Appellant into custody, placed him in the patrol car, and advised him of the Missouri implied consent law.[2]  He then asked Appellant to submit to a chemical test of his breath.  Appellant requested to speak with an attorney.  Sergeant Miller permitted Appellant to make a few calls, including one to an attorney; however, he remained inside the vehicle during the conversation.  Neither Appellant nor counsel requested privacy.  Sergeant Miller could hear Appellant, but could not discern anything said by the attorney.  A device inside the patrol car recorded audio and video of the call.  Pursuant to standard operating procedure, these recordings were forwarded to the prosecuting attorney, but there is no evidence in the record that they were used against Appellant.  After Appellant consulted with the attorney, he refused to submit to the chemical test.

The Director notified Appellant his driving privileges were revoked for one year pursuant to Section 577.041.[3]  On May 2, 2019, Appellant filed a Petition for Review of the Director's decision.  After an evidentiary hearing, the trial court entered its judgment sustaining the Director's revocation of Appellant's driving privileges.

This appeal follows.

---

[1] A score of four clues or more indicates a suspect is intoxicated.  *Gannon v. Dir. of Revenue*, 411 S.W.3d 394, 397 n.5 (Mo. App. E.D. 2013) (citing *Arch v. Dir. of Revenue*, 186 S.W.3d 477, 481 n.4 (Mo. App. E.D. 2006)).
[2] Pursuant to Section 577.020.1 RSMo (2016), any person who operates a vehicle in the state "shall be deemed to have given consent . . . to a chemical test or tests of the person's breath, blood, saliva, or urine for the purpose of determining the alcohol or drug content of the person's blood . . ."
[3] All statutory references are to RSMo (2016) as updated, unless otherwise indicated.

**DISCUSSION**

In his sole point on appeal, Appellant argues the trial court erred in sustaining the Director's revocation of his driving privileges by finding that he voluntarily and unequivocally refused to provide a sample of his breath to determine his blood alcohol content. He claims his refusal was not voluntary and unequivocal because he was deprived of his statutory right to counsel when he was not afforded a private consultation with his attorney.

*Standard of Review*

In an appeal from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). Appellate court review is directed by whether the contested issue is a question of fact or law. *Id.* Questions of law are reviewed *de novo*. *Id.* (citing *City of St. Joseph v. Vill. of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005)); *see also Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 637 (Mo. banc 2019). This case presents a question of law which we review *de novo*.

*Analysis*

When a driver has been arrested for driving while intoxicated, the timely completion of a valid chemical test to determine the driver's blood alcohol content is imperative. *Rogers v. Dir. of Revenue*, 184 S.W.3d 137, 144 (Mo. App. W.D. 2006). The state's interest is to avoid unnecessary delay before the chemical test is administered because alcohol is water soluble and the human body endeavors to remove it from the blood. *Wall v. Holman*, 902 S.W.2d 329, 331 (Mo. App. W.D. 1995). Accordingly, rather than require that every individual be taken back to a police station for chemical breath tests, officers are authorized to conduct chemical breath tests

3

directly from their patrol cars. *See* 19 C.S.R. 25-30.050(2); *see also Baker v. Dir. of Revenue*, 569 S.W.3d 63, 67 (Mo. App. W.D. 2019).

A driver has the option to refuse to submit to chemical testing, but upon doing so, his or her driving privileges are subject to an administrative revocation by the Director pursuant to Section 577.041. *McKay v. Dir. of Revenue*, 382 S.W.3d 119, 121 (Mo. App. W.D. 2012). "Giving the driver the option to refuse to consent with the consequence of an automatic one[-]year revocation of his or her driver's license balances the right to privacy against the public's interest in controlling the menace of drunken driving." *Id.* (quoting *Kimbrell v. Dir. of Revenue*, 192 S.W.3d 712, 716 (Mo. App. W.D. 2006)). To uphold the director's revocation of driving privileges, the director must show the driver's refusal to submit to chemical testing was "voluntary and unequivocal." *Roesing*, 573 S.W.3d at 637.

Appellant relies on *Roesing* for the proposition that his refusal to submit to chemical testing was not voluntary and unequivocal because his conversation with counsel was not private. In *Roesing*, a driver was arrested for driving while intoxicated and taken to the police station for a chemical test. *Id.* at 636. At the station, the driver was able to contact an attorney within the 20-minute time frame required by Section 577.041.3. *Id.* The driver handed the phone to the officer and the attorney requested to speak to the driver in private. *Id.* at 636. However, rather than comply with the requested privacy, which was readily available pursuant to the mandate of Section 600.048.3,[4] and requires that individuals held in custody at police stations be provided a "room or place" to privately speak with an attorney, the officer returned

---

[4] Section 600.048.3 provides:

> It shall be the duty of every person in charge of a jail, police station, constable's or sheriff's office, or detention facility to make a room or place available therein where any person held in custody under a charge or suspicion of a crime will be able to talk privately with his or her lawyer, lawyer's representative, or any authorized person responding to a request for an interview concerning his or her right to counsel.

4

the phone to the driver, and continued to observe him for the remainder of his consultation with counsel. *Id.* The driver's conversation with his attorney was audio and video recorded, and forwarded to the prosecuting attorney. *Id.* After the 20 minutes had passed, the driver refused to submit to a chemical test. *Id.*

The director revoked the driver's driving privileges for one year, which was sustained by the trial court. *Id.* The Missouri Supreme Court reversed, holding that the driver was entitled to a private conversation with his attorney. *Id.* at 639-40. The Court specifically held that Section 577.041.3's right to speak privately with an attorney did not interfere with the state's important goal of obtaining a timely, accurate, and valid chemical test. *Id.* at 638.

Appellant's reliance on *Roesing* is misplaced. *Roesing* dealt with a driver speaking with an attorney in a police station, not a patrol car. At a police station, an officer is subject to the "private room" requirement of Section 600.048.3, which the officer in *Roesing* acknowledged. *Id.* at 636 ("The officer replied that it might be possible to arrange for the conversation to occur in another room . . ."). In a patrol car, however, there is no "private room" requirement since a patrol car is not a "jail, police station, constable's or sheriff's office, or detention facility . . ." Moreover, there is nothing in the record here indicating whether it was even feasible for Sergeant Miller to provide Appellant with privacy in the patrol car in the event he requested it. However, an explicit request for privacy was made in *Roesing* but the driver was not given access to the private room mandated by Section 600.048.3. Here, neither Appellant nor his attorney requested privacy from Sergeant Miller. Accordingly, there is nothing in the record from which this Court could determine whether Section 577.041.3's right to privacy interferes with the state's interest in obtaining timely, accurate, and valid chemical tests. If Appellant had requested privacy, we

5

could possibly reach a different conclusion. However, we will not speculate on what Sergeant Miller could or would have done in that circumstance.

In conclusion, the facts in this situation do not merit an expansion of *Roesing* to drivers being held in patrol cars who do not request privacy when speaking with an attorney. Accordingly, the trial court did not err in sustaining the Director's revocation of Appellant's driving privileges for one year. Appellant's point is denied.

## CONCLUSION

The trial court's judgment is affirmed.

_____

Lisa P. Page, Judge

Robin Ransom, P.J. and
Sherri B. Sullivan, J., concur.

6